Sunbelt Rentals, Inc. v. Niagara Mach., Inc., 2026 NCBC 65.

STATE OF NORTH CAROLINA

WAKE COUNTY

SUNBELT RENTALS, INC., ACE
AMERICAN INSURANCE
COMPANY, and ACE PROPERTY
AND CASUALTY INSURANCE
COMPANY,

Plaintiffs,

v.

NIAGARA MACHINE, INC., THE
PHOENIX INSURANCE COMPANY,
TRAVELERS PROPERTY
CASUALTY COMPANY OF
AMERICA, and THE TRAVELERS
INDEMNITY COMPANY,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24CV027482-910

**ORDER AND OPINION ON
DEFENDANT NIAGARA MACHINE
INC.'S MOTION TO DISMISS**

1. This matter is before the Court on defendant Niagara Machine, Inc.'s motion to dismiss each of the causes of action asserted in Plaintiffs' amended complaint against Niagara. (ECF No. 55).

2. The parties have fully briefed the motion, (ECF Nos. 56, 69, 77), and the Court dispenses with oral argument pursuant to Rule 7.4 of the Business Court Rules.

3. Having considered the amended complaint, the written arguments of counsel, and applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss for the reasons set forth in this Order and Opinion.

*Carlton Fields, LLP, by Steven J. Brodie and James Robert MacAneney, and Parry Law, by K. Alan Parry and Valentin Joachim Bruder, for Plaintiffs Sunbelt Rentals, Inc., ACE*

*Property and Casualty Insurance Company, and ACE American Insurance Company.*

*Gardner Skelton PLLC, by Nicole K. Haynes and Jon P. Carroll; James deNobriga, PLLC, by Adam R. deNobriga; Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP by John E. Harris and Christopher R. Kiger; and Hedrick Gardner Kincheloe & Garofalo, LLP, by Kristy Marie D'Ambrosio and David Levy for Defendant Niagara Machine, Inc.*

Houston, Judge.

## I.     BACKGROUND

4.     The Court does not make findings of fact when resolving a Rule 12(b)(6) motion to dismiss. Instead, for background, the Court summarizes the complaint's factual allegations that are most relevant to the Court's decision and accepts the well-pleaded allegations as true for purposes of this Order and Opinion.

5.     Plaintiff Sunbelt Rentals, Inc. is an "equipment and tool rental company" doing business in North and South Carolina. (ECF No. 41, ¶¶ 4, 21).

6.     Plaintiffs ACE American Insurance Company ("**ACE American**") and ACE Property and Casualty Insurance Company ("**ACE P&C**") are Pennsylvania insurers that issued certain insurance policies to Sunbelt, with ACE American's policy serving as a primary liability policy containing a $1.5 million per-occurrence limit for "Bodily Injury and Property Damage Liability" and ACE P&C's policy serving as an umbrella policy with a $25 million per-occurrence limit. (ECF No. 41, ¶¶ 5–8; ECF Nos. 41.4 and 41.5).

7. Defendant Niagara Machine, Inc. is a "national distributor of concrete preparation equipment" based in Pennsylvania but doing business in North Carolina as well. (ECF No. 41, ¶¶ 9, 22).

8. In March 2018, Sunbelt purchased from Niagara a Shot Blaster, which is a "commercial concrete resurfacing machine with a propane-powered combustion engine that emits carbon monoxide." (ECF No. 41, ¶¶ 23–24).

9. Sunbelt alleges that it and Niagara entered into a contract for the purchase and sale of the Shot Blaster, (ECF No. 41, ¶ 4), as documented by an unsigned purchase order containing language in fine print at the bottom as follows:

> 1. This Order is not valid unless priced.
> 2. All invoices and statements must be sent as directed.
> 3. All questions should be addressed to the profit center issuing the order.
> 4. Purchase order is subject to the terms and conditions found at http://www.sunbeltrentals.com/purchaseterms

(ECF No. 41.3 at 2).

10. The "terms and conditions" expressly referenced in paragraph 4 of the purchase order were linked via the referenced URL and are attached to Sunbelt's amended complaint. (ECF No. 41, ¶ 3 (incorporating the entirety of "Exhibit C"); ECF No. 41.3 (including as part of Exhibit C the "Terms and Conditions of Purchase")).

11. The terms and conditions contain, in relevant part, the following indemnification clause:

> 7. **Indemnification**. Seller will indemnify and hold Buyer harmless, and defend Buyer, with counsel of Buyer's choosing, from all claims, demands, suits, actions, liabilities, damages, losses, penalties, costs and expenses, including legal fees and expenses, arising out of or relating

to (a) Seller's breach of the Order, including inaccuracy of any warranty in these Terms, (b) any defect in the Goods or any failure of the Goods to comply with the Specifications of the Order, (c) any product liability claim or failure to warn with respect to the Goods, (d) any voluntary or required recall of any Goods, and (e) any claims that the Goods or Buyer's use or possession of the Goods infringes or misappropriates any patent, copyright, trade secret or other intellectual property right of any person or entity.

(ECF No. 41.3, Ex. C, Terms and Conditions of Purchase, ¶ 7).

12.     Plaintiffs contend that the agreement between Niagara and Sunbelt, as documented by the purchase order, includes this indemnification provision as part of the incorporated terms and conditions. As a result, Plaintiffs assert that Niagara was required to indemnify and defend Sunbelt in the event of lawsuit related to the Shot Blaster. (ECF No. 41, ¶¶ 24−25).

13.     In July 2019, Sunbelt rented the Shot Blaster to Matthew Burns, who used it to refinish his business's floors. (ECF No. 41, ¶ 26). The next day, Burns died, and his colleague fell seriously ill, as a result of carbon monoxide emissions from the Shot Blaster. (ECF No. 41, ¶ 27).

14.     Thereafter, Burns's estate and Burns's colleague, Robert Lemoine, separately sued Sunbelt and Niagara, asserting product-defect and failure-to-warn causes of action. (ECF No. 41, ¶¶ 28–32).

15.     Sunbelt alerted ACE American, ACE P&C, and Niagara of both lawsuits and requested indemnification from Niagara in both cases pursuant to the indemnification clause. (ECF No. 41, ¶¶ 29–30).

16.    Niagara reported the incidents to "Travelers,"[1] but "neither Travelers nor Niagara provided Sunbelt with a coverage position," such that "ACE was required to continue providing legal defense to Sunbelt."[2] (ECF No. 41, ¶¶ 31, 34).

17.    In April 2023, in response to a settlement demand from the Burns estate, the ACE entities authorized a settlement offer, and defense counsel in that action notified the Travelers defendants of the settlement offer "to give Niagara a chance to object or to take over the settlement negotiations altogether." (ECF No. 41, ¶¶ 37−38).

18.    The next day, the claims handlers for the Travelers entities emailed defense counsel, notifying them that those entities were "prepared on behalf of Niagara Machine to accept defense and indemnity for the Burns and Lemoine cases," with no reservation of rights. (ECF No. 41, ¶ 39; ECF No. 41.7).

---

[1] Plaintiffs' amended complaint uses the defined term "Travelers" to collectively refer to three defendants: The Phoenix Insurance Company, Travelers Property Casualty Company of America, and the Travelers Indemnity Company. (ECF No. 41 at 1−2, n.3). Given the defined terms, it is unclear to which of the Travelers entities the notice was allegedly delivered or to which specific entity Plaintiffs are generally referring or whether Plaintiffs intend to assert these allegations against all three entities.

[2] As with their use of the term "Travelers," Plaintiffs refer to two separate entities—ACE American and ACE P&C—as "ACE" and treat them as a single entity for pleading purposes. While collectively defined terms can be appropriate under certain circumstances, this Court (across multiple judges) has consistently observed that group pleading is not compliant with the North Carolina Rules of Civil Procedure when it obfuscates, intentionally or not, the identity of the person or entity allegedly taking an action. *Hui Zhang v. CapitalNexus, LLC*, 2026 NCBC LEXIS 133, at *19 (N.C. Super. Ct. June 25, 2026) ("Jumbling parties together in this way frustrates the basic purpose of pleading, which is to give defendants in litigation notice of what they are supposed to have done wrong."); *DT Lulana Gardens LLC v. SDCK I LLC*, 2026 NCBC LEXIS 99, at *2 n.1 (N.C. Super. Ct. Apr. 28, 2026) ("express[ing] its strong disapproval of this practice"); *Spring v. Lawson*, 2026 NCBC LEXIS 97, at *8 (N.C. Super. Ct. Apr. 27, 2026) (disapproving of "improper group pleading").

19. The claims handlers for the Travelers entities thereafter affirmatively represented that they were not reserving any rights or defenses to coverage in the two pending actions. (ECF No. 41, ¶ 40).

20. The Travelers entities thereafter assumed control of the defense in both cases and declined to convey the settlement offer initially approved by the ACE entities in the Burns estate matter. (ECF No. 41, ¶ 43).

21. Ultimately, despite multiple settlement demands from the plaintiff in the Burns case and despite Plaintiffs' repeated entreaties, the Travelers entities refused to respond to settlement offers and declined to extend settlement offers, instead proceeding to trial. (ECF No. 41, ¶¶ 43–53).

22. Immediately prior to trial, the Travelers entities purported to issue a "formal response" to Sunbelt's tender with respect to the Burns estate's case, agreeing to defend and indemnity Sunbelt but with "boilerplate reservation of rights" language. (ECF No. 41, ¶ 49).

23. On 18 July 2026, nearing the close of trial and after the case had been submitted to the jury, representatives of the Travelers entities sent an email indicating that certain theories of liability against Sunbelt that had been submitted to the jury were outside the scope of potential coverage and that neither Niagara nor Travelers would provide indemnification for a judgment entered in accordance with those theories of liability against Sunbelt. (ECF No. 41, ¶ 59). Ultimately, Travelers purported to disclaim coverage for the negligence cause of action but not for the product-liability cause of action. (ECF No. 41, ¶ 62).

24. Thereafter, a jury found Sunbelt liable for negligence, and a judgment of $8,904,430.68 was ultimately entered against Sunbelt. (ECF No. 41, ¶ 61; ECF No. 41.10).

25. Ultimately, the Burns estate's action was settled for an amount above the limits of the Travelers entities' policies, and the Travelers entities and Niagara refused to indemnify Sunbelt in connection with that action, with all Plaintiffs thereafter contributing "millions of dollars" towards the settlement as a result. (ECF No. 41, ¶¶ 66–69).

26. Similarly, without involving Sunbelt in the discussions, all Defendants ultimately negotiated a resolution with Lemoine, "using the majority of the Travelers Policies' remaining policy limits to settle the Lemoine Action on behalf of Niagara only, leaving Sunbelt out of the settlement entirely." (ECF No. 41, ¶ 70).

27. Plaintiffs then commenced this action, ultimately asserting five causes of action against Niagara: (i) a declaratory judgment regarding the Burns estate's action, (ii) a declaratory judgement regarding the Lemoine action, (iii) "restitution/equitable subrogation, implied indemnity" and a declaratory judgment regarding repayment for both the Burns estate's and Lemoine actions, (iv) breach of the covenant of good faith and fair dealing, and (v) breach of contract. (ECF No. 41 at 14−29). Plaintiffs also asserted various other causes of action against the Travelers entities. (*See generally* ECF No. 41).

28. Pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, Niagara has moved to dismiss each of these causes of action against it. (ECF No. 55).

## II. ANALYSIS

29. When considering a Rule 12(b)(6) motion, the Court treats the well-pleaded factual allegations as true and views them "in the light most favorable to the non-moving party." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019) (citation omitted); *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017). The Court must determine "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation omitted); *Forsyth Mem'l Hosp. v. Armstrong World Indus.*, 336 N.C. 438, 442 (1994).

30. As the basis for its suit against Niagara, Sunbelt contends in essence that Niagara is bound by the indemnification clause contained in the terms and conditions of the parties' contract documented via the purchase order. (ECF No. 41, ¶ 24).

31. In support of its motion, Niagara counters that the indemnification clause and the other terms and conditions linked in the Sunbelt-Niagara purchase order "are not binding on Niagara because they were not properly made part of the contract for the sale of the Shot Blaster." (ECF No. 56 at 2; *see generally* ECF No. 69).

### a. Breach of Contract

32. As Plaintiffs' causes of action are premised on the existence of a contract—and particularly a valid indemnification provision—between Sunbelt and Niagara, the Court first addresses Plaintiffs' breach of contract cause of action, which is asserted as their ninth cause of action.

33. To state a claim for breach of contract, a plaintiff generally must allege the "(1) existence of a valid contract and (2) breach of the terms of the contract." *Highland Paving Co. v. First Bank*, 227 N.C. App. 36, 40 (2013) (citations and internal quotation marks omitted).

34. Here, Plaintiffs affirmatively allege that (i) Sunbelt and Niagara entered into a contractual agreement, (ii) the indemnification provision was part of that agreement, (iii) the purchase order reflects the terms of the parties' agreement, and (iv) Niagara breached the contract "by refusing to pay the full costs of Sunbelt's defense and indemnity" in the Burns and Lemoine Actions. (ECF No. 41, ¶¶ 3, 24, 107–08, 135–39).

35. This adequately states a claim for breach of contract by Sunbelt against Niagara,[3] and Niagara does not argue otherwise. Rather, Niagara argues only that the indemnification provision was not, as a matter of law, properly incorporated as part of that contract. (ECF No. 56 at 8 (conceding that the parties "entered into a valid and enforceable contract by which Niagara sold Sunbelt the Shot Blaster it ordered at a given price"); ECF No. 77 at 7–8).

36. On the other hand, Plaintiffs assert that the terms and conditions were validly incorporated by reference into the Sunbelt-Niagara agreement, (*see generally*

---

[3] The contract is only alleged to be between Sunbelt and Niagara, yet Plaintiffs seek damages to "indemnify [all] Plaintiffs for breach of the Niagara-Sunbelt Contract." (ECF No. 41, ¶¶ 3, 24, 139). Nonetheless, Niagara also does not move to dismiss the breach of contract or the implied covenant of good faith and fair dealing causes of action on the basis that ACE American and ACE P&C were not parties to the contract. The Court therefore makes no determination at this stage as to whether Plaintiffs have adequately alleged a valid breach of contract or implied covenant claim as between *all* Plaintiffs and Niagara.

ECF Nos. 41 and 69), while Niagara—relying largely on Texas and Florida law—asserts that an unsigned purchase order, "with no evidence or indication that Niagara assented to [the terms and conditions]," cannot incorporate such terms by reference, even where it indicates that the agreement is "subject to" those terms and conditions. (ECF No. 56 at 2, 9–10, 19–22).

37.     Where a contract "expressly include[s]" or incorporates external terms by reference, those terms may form part of the contract. *Hoaglin v. Duke Univ. Health Sys., Inc.*, 293 N.C. App. 517, 523 (2024); *Montessori Children's House of Durham v. Blizzard*, 244 N.C. App. 633, 637 (2016) ("When a contract expressly incorporates a document by reference . . . that document becomes a part of the parties' agreement."); *Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 362 N.C. 269, 273 (2008) ("To incorporate a separate document by reference is to declare that the former document shall be taken as part of the document in which the declaration is made, as much as if it were set out at length therein." (citation and internal quotation marks omitted)).

38.     Generally, incorporation by reference requires that "the paper to be incorporated into a written instrument by reference must be so referred to and described in the instrument that the paper may be identified beyond all reasonable doubt." *Smith v. Marez*, 217 N.C. App. 267, 277 (2011) (citation omitted).

39.     For example, the inclusion of language that the primary document or agreement is "subject to" other terms and conditions can be sufficient to incorporate those terms and conditions by reference. *E.g.*, *Supplee v. Miller-Motte Bus. Coll., Inc.*,

239 N.C. App. 208, 211–12, 220 (2015) (concluding that an enrollment agreement's provision that the student's enrollment was "subject to all terms and conditions set forth in" the school's catalog was sufficient to incorporate those terms and conditions into the agreement).

40. Here, as explained above, Plaintiffs affirmatively allege the existence of a contract between Niagara and Sunbelt. They also assert that the indemnification clause and other terms and conditions were included in that contract and that the purchase order documented the parties' agreement. (ECF No. 41, ¶¶ 3, 24, 107–08, 135–39).

41. Indeed, the purchase order expressly provides that the "Purchase Order is *subject to* the terms and conditions found at http://www.sunbeltrentals.com/purchaseorderterms." (ECF No. 41.3 at 2 (emphasis added)).

42. As the North Carolina Court of Appeals concluded in *Supplee*, such "subject to" language is sufficient to "incorporate[] the terms and conditions set forth in" the referenced document or at the referenced link. *Supplee*, 239 N.C. App. at 211–12, 219−20.

43. Even absent the *Supplee* court's direct guidance, the plain language of the purchase order clearly and unambiguously predicates the entire purchase order on the "terms and conditions," including the indemnification clause, found at the listed URL. (ECF No. 41.3 at 2).

44. Further, to the extent Niagara contends that the unsigned nature of the purchase order somehow prevents the terms and conditions from being incorporated into the parties' overall agreement, the Court disagrees and determines that Plaintiffs have adequately alleged the existence of a valid contract between Niagara and Sunbelt that Niagara has purportedly breached. (ECF No. 41, ¶¶ 3, 24, 107–08, 135–39; ECF No. 41.3 at 2).

45. Thus, inasmuch as Niagara moves to dismiss Plaintiffs' breach of contract cause of action on the basis that the indemnification clause was not included within the terms of the parties' contract, the Court **DENIES** the motion.[4]

### b. **Declaratory Judgment Causes of Action**

46. With their first, second, and third causes of action, Plaintiffs seek declaratory relief with respect to Niagara's purported payment, indemnity, and other obligations under the Niagara-Sunbelt contract. (*See generally* ECF No. 41, ¶¶ 71–84).

47. Under North Carolina law, "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed." N.C. Gen. Stat. § 1-253. Further,

> [a]ny person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations

---

[4] As explained above, however, the Court makes no determination that Plaintiffs have adequately alleged a breach of contract claim by *all* Defendants. Rather, the Court limits its review to the arguments raised by Niagara. *See* BCR 7.2 ("The parties must brief the matters they intend to discuss at a hearing on the motion.").

thereunder. A contract may be construed either before or after there has been a breach thereof.

N.C. Gen. Stat. § 1-254.

48. It is not a high bar to state a claim for declaratory relief, so a "motion to dismiss for failure to state a claim is seldom appropriate in actions for declaratory judgments[.]" *Morris v. Plyler Paper Stock Co.*, 89 N.C. App. 555, 557 (1988). "Rather, a motion to dismiss a declaratory-judgment claim is appropriate only 'when the complaint does not allege an actual, genuine existing controversy.'" *Gvest Real Estate, LLC v. JS Real Estate Invs., LLC,* 2017 NCBC LEXIS 32, at *9 (N.C. Super. Ct. Apr. 6, 2017) (quoting *Legalzoom.com, Inc. v. N.C. State Bar*, 2012 NCBC LEXIS 49, at *9 (N.C. Super. Ct. Aug. 27, 2012)); *La Familia Cosmovision, Inc. v. Inspiration Networks,* 2014 NCBC LEXIS 52, at *14−15 (N.C. Super. Ct. Oct. 20, 2014) ("Simply stated, a declaratory judgment claim is subject to dismissal where the relevant pleadings do not contain allegations upon which the sought declaratory relief may be granted.").

49. Here, Niagara once again does not dispute that Plaintiffs have adequately pleaded the elements of a claim for declaratory relief but, instead, bases the entirety of its argument on alleged deficiencies in the Niagara-Sunbelt contract and its purported incorporation of the indemnification provision and other terms and conditions. (*See* ECF No. 56 at 1–2 (focusing exclusively on arguments that the indemnification provision and other terms and conditions were not made part of the contract at issue)).

50. For purposes of resolving the motion to dismiss, Plaintiffs' complaint alleges an actual, existing controversy between the parties regarding Niagara's purported breach of the contract, its failure and refusal to provide indemnification, and the parties' differing interpretations of the contract and their resulting obligations, if any. (*See generally* ECF No. 41).

51. Further, as set forth above, Plaintiffs have adequately alleged facts to suggest, and the documents filed with the complaint indicate, that the indemnification provision was incorporated into the agreement at issue. (ECF No. 41, ¶¶ 3, 24, 107–08, 135–39; ECF No. 41.3 at 2).

52. At the motion to dismiss stage, Plaintiffs have adequately pleaded actual controversies to support claims for declaratory judgments, and the Court therefore **DENIES** Niagara's motion to dismiss as to Plaintiffs' first, second, and third causes of action against Niagara.

### c. Restitution, Implied Indemnity, and Equitable Subrogation

53. With their third cause of action, in addition to the request for declaratory relief addressed above, Plaintiffs take a questionable shotgun approach, asserting purported causes of action for restitution, implied indemnity, and equitable subrogation. (ECF No. 41, ¶¶ 79–84).

54. Niagara argues that these causes of action fail because (i) restitution is a remedy rather than a cause of action, (ii) Niagara had no indemnity obligation under the Niagara-Sunbelt contract, and (iii) the Niagara-Sunbelt contract bars an equitable cause of action and relief. (ECF No. 56 at 23–27).

55.    As to Plaintiffs' putative cause of action or "claim" for restitution, as Niagara explains, restitution is a remedy rather than an independent cause of action, and Plaintiff offers no response in its briefing. *Holmes v. Solon Automated Servs.*, 231 N.C. App. 44, 53 (2013) (addressing "the remedy of restitution"). Thus, the Court **GRANTS** the motion and **DISMISSES** the putative cause of action for restitution without prejudice to Plaintiffs' ability to seek restitution as a remedy at a later stage of the case if appropriate.

56.    As to Plaintiffs' causes of action or "claims" for implied indemnity and equitable subrogation, "[e]quitable subrogation is a doctrine whereby 'an insurance company, pursuant to the terms of its contract of insurance, indemnifies the insured for loss resulting from a wrongful act of a third person, it is by operation of law subrogated to the extent of such payment to the rights of its insured against the tortfeasor.'" *Grp. Health Plan v. Integon Nat'l Ins. Co.*, 2011 N.C. App. LEXIS 1762, at *10 (Aug. 16, 2011) (citation omitted).

57.    However, equitable subrogation "*is not a separate cause of action on its own*; rather, equitable subrogation is a mechanism whereby an insurer that pays for the claims of its insured becomes subrogated to the rights of the insured against the tortfeasor that caused the injuries. Thus, the insurer has a right to pursue those causes of action which otherwise would have been brought by the insured against the tortfeasor." *Id.* at *12 (emphasis added) (internal citations omitted); *see also Bank of N.Y. Mellon v. Withers*, 240 N.C. App. 300, 302 (2015) (explaining that equitable subrogation "applies when one person has been compelled to pay a debt which ought

to have been paid by another and for which the other party was primarily liable" (citation omitted)).

58. To the extent that Plaintiffs therefore purport to assert a "claim" for equitable subrogation rather than asserting causes of action to which they have been equitably subrogated, the Court **GRANTS** the motion and **DISMISSES** this putative "claim" without prejudice to the ability to pursue appropriate causes of action and claims to which they might appropriately be subrogated.

59. Further, indemnity implied in fact[5] "stems from the existence of a binding contract between two parties that necessarily implies the right. The implication is derived from the relationship between the parties, circumstances of the parties' conduct, and that the creation of the indemnitor/indemnitee relationship is derivative of the contracting parties' intended agreement." *In re Southeastern Eye Ctr.-Pending Matters*, 2019 NCBC LEXIS 29, at *151 (N.C. Super. Ct. May 7, 2019) (citations omitted).

60. While Plaintiffs plead the existence of a valid contract between Niagara and Sunbelt without expressly pleading their implied indemnity cause of action in the alternative, the Court cannot conclude "beyond doubt" at this stage that Plaintiffs "could prove no set of facts in support of [their] claim which would entitle [them] to relief" with respect to their cause of action for indemnity implied in fact, and the Court therefore **DENIES** the motion as to implied indemnity. *Meyer v. Walls*, 347

---

[5] Plaintiffs argued in their brief only indemnity implied in fact and not indemnity implied in law, and the Court limits its analysis accordingly. (ECF No. 69 at 25–26).

N.C. 97, 111–12 (1997) (citation omitted); *McDonald v. Scarboro*, 91 N.C. App. 13, 22 (1988) (addressing implied-in-fact indemnity).

### d. Implied Covenant of Good Faith and Fair Dealing

61. With their sixth overall cause of action, Plaintiffs allege that Niagara has breached the covenant of good faith and fair dealing implied in the Niagara-Sunbelt contract by unreasonably and indifferently refusing to defend and indemnify Sunbelt, failing and refusing to engage in good-faith efforts to settle the Burns and Lemoine cases, failing to properly investigate and evaluate the claims against Sunbelt in those cases, failing to inform Sunbelt about settlement demands and otherwise to keep it apprised of developments, instructing the Travelers entities not to contribute certain amounts to settlement of the Burns case, negotiating a settlement of the Lemoine case without involving Sunbelt, and misrepresenting to Sunbelt that amounts were being withheld for Sunbelt's defense before using those funds to settle claims against Niagara only. (ECF No. 41, ¶¶ 115–16).

62. Niagara once again argues only that this cause of action should be dismissed because there can be no breach of the implied covenant of good faith and fair dealing when the underlying contract into which it is implied is otherwise allegedly invalid. (ECF No. 56 at 22–23).

63. "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Governor's Club Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 251 (2002) (citation omitted).

64.     "To state a valid claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must plead that the party charged took action which injure[d] the right of the other to receive the benefits of the agreement, thus depriv[ing] the other of the fruits of [the] bargain." *McDonald v. Bank of N.Y. Mellon Trust Co.*, 259 N.C. App. 582, 586−87 (2018) (citations and internal quotation marks omitted).

65.     Plainly stated, Plaintiffs' allegations sufficiently allege a valid contract between Niagara and Sunbelt and a breach of the implied covenant of good faith and fair dealing by Niagara.

66.     The Court therefore **DENIES** Niagara's motion to dismiss as to this issue.[6]

### e. Punitive Damages

67.     Finally, as part of their implied covenant of good faith and fair dealing allegations, Plaintiffs also assert that "because Niagara has engaged and is continuing to engage in a pattern of aggravating or outrageous conduct, reflecting malicious, wanton or reckless disregarding of Plaintiffs' rights . . . Sunbelt is entitled to punitive damages against Niagara." (ECF No. 41, ¶ 117).

68.     As Niagara argues in its brief, however, Plaintiffs' amended complaint fails to identify any allegedly tortious act by Niagara that would allegedly support a request for the remedy of punitive damages. (ECF No. 56 at 23 n.1). And, once

---

[6] Though Plaintiffs frame the two as distinct causes of action in their amended complaint, (ECF No. 41, ¶¶ 106–17, 134–39), a breach of the implied covenant of good faith and fair dealing is generally subsumed within a contemporaneously pleaded breach of contract cause of action. *See Cordaro v. Harrington Bank, FSB*, 260 N.C. App. 26, 39 (2018); *Intersal, Inc. v. Wilson*, 2023 NCBC LEXIS 29, at *66–70 (N.C. Super. Ct. Feb. 23, 2023). Regardless, Niagara raises no argument concerning Plaintiffs' separate pleading of the two, and the Court construes them as part of the same ultimate breach of contract cause of action, regardless of their separate headings.

again, Plaintiffs fail to respond in any way in their brief, with no mention of punitive damages. (*See generally* ECF No. 69).

69. Ultimately, the Court agrees with Niagara and concludes that Plaintiffs have failed to allege any "tortious act" by Niagara that might support a request for punitive damages. *Shore v. Farmer*, 351 N.C. 166, 170 (1999) (citation and internal quotation marks omitted); *see also* N.C. Gen. Stat. § 1D-15(d).

70. The Court therefore **GRANTS** Niagara's motion to dismiss as to Plaintiffs' request for punitive damages against Niagara and **DISMISSES** that request without prejudice.[7]

## III.    CONCLUSION

71. Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Niagara's motion to dismiss as set forth above.

**SO ORDERED**, this 22nd day of July 2026.

/s/ Matthew T. Houston
Matthew T. Houston
Special Superior Court Judge
for Complex Business Cases

---

[7] Ordinarily, "[t]he decision to dismiss an action with or without prejudice is in the discretion of the trial court[.]" *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191 (2013).